Shaxjck, J.
The judgment which this petition in error brings into review necessarily implies several propositions which it would be difficult to maintain. *342 The ease in the court of common pleas- was a suit in equity to enjoin the further pollution of a stream of water and for incidental damages on account of injuries occasioned by its pollution previous to the bringing of the suit. The character of the suit was not changed by any amendment either in that court or in the circuit court. Both courts denied the principal relief by injunction but awarded incidental relief by way of damages. A jury was not waived. To the contrary, the city insisted that upon a mere question of damages it. was entitled to the intervention of a jury. The attitude of the city towards the subject of the suit did not change throughout its progress. At the close of the suit it was as well amenable to the equitable relief sought as at its beginning. The record shows that in the court of common pleas equitable relief was denied “because of the fact that the plaintiff neither owned nor was in possession of the property in the petition described at the date of the trial of this section;” and that in the circuit court there was a like denial of equitable relief “it appearing to the court that the nuisance complained of is of long standing and that considerations of public policy intervene.” According to the record, incidental relief by way of damages was awarded although the plaintiff failed to establish its right to the equitable relief primarily sought, because, in the view of one court, it had voluntarily changed its attitude towards the subject of the suit, and in the view of the other, because, of an infirmity which inhered in the equitable case of the plaintiff from the beginning. It is not a case in which, the right to the principal relief in equity being established, a court of equity, having jurisdiction of the case to award *343 that relief, will go forward and award the plaintiff full relief by compensation in damages. Nor is it a case in which, the plaintiff’s equitable case being complete, the court will substitute a judgment for damages because, owing to a change in the relation of the defendant to the property concerned, the equitable relief would be unavailing. Nor can the procedure in the case' be justified by the precedents which give vitality to the law of lis pendens by holding that one who purchases property which is the subject of litigation purchases it subject to the event of the pending suit. Assuming that the courts below were correct in the view that the company was entitled to recover damages, when its equitable case failed for either of the reasons assigned, it should have been restricted to its action for money only in which either party would be entitled to a jury. In those states where legal and equitable remedies are administered by different courts, the plaintiff’s equitable case failing for either of the reasons here assigned, its bill in equity would be dismissed and it would be remitted to its action at law.
The judgment also implies the right of the plaintiff to recover damages on account of injuries to the property after it conveyed it to another; and this because, as appears only from the certificate in the bill of exceptions, its grantee "in open court adopted and ratified the prosecution by the record plaintiff, and by its counsel participated in the trial of the case.”
A more important question is, was the company entitled to recover damages in view of the facts which appeared upon the trial? With this question in view, the facts have been fully presented in the *344 statement of the case, and it is not deemed necessary to repeat them here with fullness or detail. It appears that for very many years the owners of property lying by Kingsbury run for more than a mile above the company’s premises have generally treated it ■as completely diverted from the primary uses of a flowing stream to those of a public open sewer. It is sufficient for present purposes that both the company and the city, the parties who will be concluded by the judgment in the present case, have so treated it continuously and uninterruptedly for more than twenty-one years prior to the bringing of this suit. To that diversion both parties have effectively contributed, the city by discharging the contents of its sewers into the stream and the company by discharging into it the contents of its water closets ■ and a million gallons daily of noxious and polluting wastage from its paper mill. These things were done by each without protest from the other. The law applicable to these facts may be conveniently quoted from the texts of recognized authors. “It is hardly necessary to state that any private riparian proprietor upon a stream may acquire, as against other proprietors, special rights to the use of the water, in the nature of easements and servitudes far other and greater than those which the law confers upon him simply as a riparian proprietor.” Black’s Pomeroy on Water Rights, sec. 152. Servitudes are easements within the doctrine that “easements of every sort may be acquired by adverse user for the period of time limited by the statute of limitations for the right of entry upon land.” Angelí on Water Courses, sec. 208. “With respect to prescriptive rights it is conceded that the owner of land *345 upon the margin of a natural stream may by long usage acquire the right to use the water in a manner not justified by his natural rights,” Gould on Waters, sec. 329.
That during the period named the city has increased the amount of sewage discharged into the run is unimportant. For more than twenty-one years before the beginning of this action pollution from sewers of the city, the works of the company and the multitudinous other sources mentioned in the statement of the case has rendered the waters wholly and admittedly unfit for any form of domestic use and devoted the run to sewerage purposes. The added sewers required by the growth of the city have been but a natural increase by it in the use of what was already a public sewer.
It is in vain that the company invokes the doctrine of Mansfield v. Balliett, 65 Ohio St., 451. Concerning that case it may be observed that it was an extreme application of the rules of law looking to the protection of the purity of flowing waters. Indeed it was so extreme as to bring the case into conflict with very many authorities and to prevent the concurrence in the judgment of half of the members of this court. But its correctness need not be questioned here. Differences between the cases are obvious and legally important. The stream whose waters were there the subject of controversy, after flowing by the city of Mansfield, continued to flow through the Open country, where they were continuously used for domestic purposes. The suit was brought by a riparian owner who had in no manner contributed to rendering the stream unfit for the purposes for which he insisted that the city should *346 preserve it. It was brought before prescriptive rights had attached. In the present case the polluted portion of the stream is wholly within the city of Cleveland, where its surroundings are appropriate to the secondary use to which it has been devoted;, the suit is brought by a plaintiff whose contributions to the pollution of the stream would render it unfit for primary or domestic purposes, and it was brought after prescriptive rights had attached. If differences so vast should pass unobserved by the courts the bandage upon the eyes of imaged Justice would substantially change its symbolic meaning. Indeed it would be difficult to sustain a recovery by the present plaintiff if the city had not acquired prescriptive right to interfere with the original flowage of the water. But the case concedes the general proposition that the riparian owner has the right to the flowage of water in its natural condition as to purity, and it concedes all that was decided in Mansfield v. Balliett, for from its essential nature a servitude is always in derogation of common right.
We trust that the view of the subject which we have taken has not been influenced by a desire to enjoy the rare felicity of awarding a substantial triumph to both parties. For the operation of its plant the company can doubtless secure a supply of sufficiently pure water from sources which have become known in the thirty-five years during which resort has been had to them. And the conclusion that Kingsbury run is not within the rules of law for the protection of streams devoted to their primary uses may exempt the company from the' ruinous consequences of indictment and punishment under section 6919 and the following sections of the Revised Stat *347 utes providing for the punishment of offenses against public health.
The judgment will be reversed; and, as the case presented suggests no reason why it should further vex either of the parties or occupy the time of the courts, a final judgment will be rendered here in favor of the plaintiff in error.

Judgment accordingly.

Davis, C. J., Price, Crew, Summers and Spear, JJ., concur.